**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 1:23-cv-24931-ALTONAGA/Reid**

**DAVID'S DOZER V-LOC SYSTEM INC.,**
**and DAVID ARMAS,**

                Plaintiffs,                            JURY TRIAL DEMANDED

v.

**DEERE & COMPANY,**

                Defendant.
_____/

**DEFENDANT'S MOTION AND MEMORANDUM OF LAW IN SUPPORT OF ITS**
**<u>MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF IOWA</u>**

## **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................... 1

II.     FACTUAL BACKGROUND...................................................................................... 2

III.    LEGAL STANDARD ................................................................................................ 2

IV.     ARGUMENT.............................................................................................................. 3

        A.      This Action Could and Should Have Been Brought in the
                Northern District of Iowa ................................................................................ 3

        B.      The Private-Interest Factors Favor Transfer to the Northern
                District of Iowa................................................................................................ 5

                1.      Convenience of the Witnesses Strongly Favors Transfer.......................... 5

                2.      The Location of Documents and Other Sources of Proof
                        Favors Transfer.................................................................................... 8

                3.      The Convenience of the Parties Strongly Favors
                        Transfer................................................................................................ 9

                4.      The Locus of Operative Facts Strongly Favors Transfer ....................... 10

                5.      The Ability of Process to Compel the Attendance of
                        Unwilling Witnesses Is Neutral or Slightly Favors
                        Transfer................................................................................................ 11

                6.      The Relative Means of the Parties Is Neutral ......................................... 12

                7.      The Weight Accorded a Plaintiff's Choice of Forum Is
                        Neutral or Slightly in Favor of Transfer................................................. 13

        C.      The Public-Interest Factors Favor Transfer to the Northern
                District of Iowa................................................................................................ 14

                1.      The Forum's Familiarity with the Governing Law Is
                        Neutral .................................................................................................. 14

                2.      The Interest of Justice and Judicial Economy Favor
                        Transfer................................................................................................ 14

V.      CONCLUSION ......................................................................................................... 15

**\*\*All emphasis added and internal quotation marks and citations omitted
unless otherwise indicated\*\***

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbate v. Wells Fargo Bank, Nat'l Ass'n*,
   No. 09-62047-CIV, 2010 WL 3446878 (S.D. Fla. Aug. 31, 2010)...........................................3

*In re Apple Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020) ...........................................................................................8

*In re Apple Inc.*,
   No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) ...................................................3

*Canopies, Inc. v. Country Lane Gazebos, LLC*,
   No. 13-80239-CIV, 2013 WL 9827411 (S.D. Fla. June 14, 2013) ...................................13, 15

*Carucel Invs., L.P. v. Novatel Wireless, Inc.*,
   157 F. Supp. 3d 1219 (S.D. Fla. 2016).........................................................................7, 10, 12

*Clinton v. Sec. Benefit Life Ins. Co.*,
   No. 19-CV-24803, 2020 WL 6120565 (S.D. Fla. June 29, 2020)...................................11, 14

*Filtalert Corp. v. International Business Machines Corp.*,
   No. 15-22845-CIV-GAYLES, 2015 WL 9474640, (S.D. Fla. Dec. 29, 2015) .......................5

*Game Controller Tech. LLC v. Sony Comput. Ent. Am. LLC*,
   994 F. Supp. 2d 1268 (S.D. Fla. 2014).............................................................................5, 7

*Harman v. Taurus Int'l Mfg., Inc.*, No. 21-CV-20451, 2021 WL 5176510, at *4
   (S.D. Fla. Oct. 18, 2021) ...................................................................................................12

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) .................................................................................3, 5, 7

*In re Genentech, Inc.*,
   566 F.3d at 1343–45 ...........................................................................................................5

*Gonzalez v. Pirelli Tire, LLC*,
   No. 07-80453-CIV, 2008 WL 516847 (S.D. Fla. Feb. 22, 2008).............................................5

*In re Hulu, LLC*,
   No. 2021-142, 2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) ...................................................6

*Innovative Patented Tech. LLC v. Icon Health & Fitness, Inc.*,
   No. 08-CV-80080, 2008 WL 11331996 (S.D. Fla. July 15, 2008) .......................................8, 9

## TABLE OF AUTHORITIES (CONT'D)

Page(s)

*Manuel v. Convergys Corp.*,
   430 F.3d 1132 (11th Cir. 2005) .................................................................................... 3, 13

*Mason v. SmithKline Beecham Clinical Lab'ys*,
   146 F. Supp. 2d 1355 (S.D. Fla. 2001) ............................................................................ 11

*Meng v. Chu*,
   643 F. App'x 990 (Fed. Cir. 2016) .................................................................................... 4

*Meterlogic, Inc. v. Copier Sols., Inc.*,
   185 F. Supp. 2d 1292 (S.D. Fla. 2002) ......................................................................... 3, 4

*MindbaseHQ LLC v. Google LLC*,
   No. 20-CV-24742, 2021 WL 1923142 (S.D. Fla. May 13, 2021) ............................. 7, 10, 12

*Moghaddam v. Dunkin Donuts, Inc.*,
   2002 WL 1940724 (S.D. Fla. Aug. 13, 2002) ................................................................ 7, 13

*Morrissey v. Subaru of Am., Inc.*,
   No. 1:15-CV-21106, 2015 WL 9583278 (S.D. Fla. Dec. 31, 2015) .................................... 14

*Motorola Mobility, Inc. v. Microsoft Corp.*,
   804 F. Supp. 2d 1271 (S.D. Fla. 2011) ................................................................. 1, 5, 10, 13

*Osgood v. Disc. Auto Parts, LLC*,
   981 F. Supp. 2d 1259 (S.D. Fla. 2013) .......................................................................... 1, 3, 5

*POSVEN v. Liberty Mut. Ins. Co*,
   303 F. Supp. 2d 391, 2004 U.S. Dist. LEXIS 381 (S.D.N.Y. 2004) .................................... 14

*Pro Mktg. Sales, Inc. v. Secturion Sys., Inc.*,
   No. 1:19-CV-00113, 2020 WL 5912351 (D. Utah Oct. 6, 2020) ......................................... 4

*Rothschild Connected Devices Innovations v. The Coca-Cola Co.*,
   No. 15-24067, 2016 WL 1546427 (S.D. Fla. Apr. 15, 2016) ............................................ 9, 14

*Rothschild Storage Retrieval Innovations, LLC v. Sony Mobile Commc'ns (USA) Inc.*,
   No. 14-CIV-22652, 2015 WL 224952 (S.D. Fla. Jan. 15, 2015) ......................................... 13

*Stokes v. Markel Am. Ins. Co.*,
   No. 19-CV-20404, 2019 WL 8017457 (S.D. Fla. June 28, 2019) .................................. 11, 12

*Trace-Wilco, Inc. v. Symantec Corp.*,
   No. 08-CV-80877, 2009 WL 455432 (S.D. Fla. Feb. 23, 2009) ............................... 10, 13, 15

*Trinity Christian Ctr. Of Santa Ana, Inc. v. New Frontier Media, Inc.*,
   761 F. Supp. 2d 1322 (M.D. Fla. 2010) ........................................................................... 11

## TABLE OF AUTHORITIES (CONT'D)

Page(s)

*In re VerHoef*,
   888 F.3d 1362 (Fed. Cir. 2018) ............................................................................4

*Wi-LAN USA, Inc. v. Apple Inc.*,
   No. 12-cv-24318, 2013 WL 1343535 (S.D. Fla. Apr. 2, 2013)..................................4

**Statutes**

15 U.S.C. § 1125(a)(1)(B) ......................................................................................14

28 U.S.C. § 1400(b) .................................................................................................3

28 U.S.C. § 1404 .....................................................................................................1

28 U.S.C. § 1404(a) .....................................................................................1, 2, 3, 5

35 U.S.C. § 256 ......................................................................................................14

35 U.S.C. § 271 ......................................................................................................14

**Rules**

Fed. R. Civ. P. 45....................................................................................................11

## I.    INTRODUCTION

Pursuant to 28 U.S. Code § 1404, and for the reasons stated below, Defendant Deere & Company ("Deere") moves to transfer this case from the Southern District of Florida to the Northern District of Iowa. The Northern District of Iowa is clearly where this dispute belongs: the research, development, and marketing for the 333G SmartGrade™ Compact Track Loader ("333G") and SmartGrade™ six-way dozer blade attachment ("SG96") (collectively, "Accused Products") were conducted primarily in Dubuque, Iowa and its vicinity, and all of the named inventors of the patents related to the correction of inventorship claims work in Dubuque, Iowa.[1]

In assessing a request to transfer venue pursuant to Section 1404(a), courts first consider whether the case could have been brought in the proposed forum and then examine multiple private- and public-interest factors. *See Osgood v. Disc. Auto Parts, LLC*, 981 F. Supp. 2d 1259, 1263 (S.D. Fla. 2013). There is no question that this case could have, and should have, been brought in the Northern District of Iowa, where JDCFC and most of its inventors, engineers, and business witnesses are located. Further, each of the private- and public-interest factors is either neutral or weighs in favor of transfer. Here, David's Dozer V-Loc System Inc. ("DDVLS") and David Armas ("Mr. Armas") (collectively, "Plaintiffs") have alleged patent infringement, correction of inventorship, and false advertising claims that directly implicate JDCFC's R&D and engineering operations in Dubuque, Iowa. This Court has consistently held that for patent infringement cases, the center of gravity "is where ***the accused product*** was designed and developed." *Motorola Mobility, Inc. v. Microsoft Corp.*, 804 F. Supp. 2d 1271, 1276 (S.D. Fla. 2011). Thus, the factual and procedural nexus to the Northern District of Iowa is evident, given the centrality of the Dubuque facilities in the development of the accused technology. Indeed, Plaintiffs have already begun seeking discovery related to the Accused Products and prototypes located ***over 1,200 miles away*** in Dubuque, Iowa, and the burden of transporting numerous defense witnesses for hearing or trial from Dubuque, Iowa to Miami will be significant.

In sum, this case could have been brought in the Northern District of Iowa, and the private- and public-interest factors overwhelmingly favor transfer. Deere therefore respectfully requests that the Court transfer this case to the Northern District of Iowa.

---

[1]    As stated in Deere's concurrently filed Motion to Dismiss, JDCFC is the party responsible for the design, development, manufacturing, marketing, and sale of the Accused Products. *See also* Ex. A (Heine Decl.) ¶¶ 7, 9.

## II.      FACTUAL BACKGROUND

Plaintiffs assert three causes of action against Deere. ***First***, DDVLS asserts Deere infringes United States Patent No. 10,533,300 ("the '300 Patent") through the Accused Products. Dkt. 01, ¶¶ 7, 27. ***Second***, DDVLS asserts a claim of false advertising based on statements made by JDCFC's marketing manager, Mr. Gregg Zupancic. Dkt. 01, ¶¶ 17–21. ***Third***, Mr. Armas alleges correction of inventorship is warranted on four Deere patents: U.S. Patent Nos. 11,028,557 ('557 Patent), 11,286,641 ('641 Patent), 10,975,547 ('547 Patent), 10,760,243 ('243 Patent) (collectively, the "Deere Patents"). *Id*. According to the Complaint, Mr. Armas is the sole inventor of the '300 Patent and his company, DDVLS, owns the '300 Patent by assignment.

As an initial matter, and as explained in Deere's concurrently-filed motion to dismiss, Deere does not manufacture or sell any of the Accused Products in this case. JDCFC, a subsidiary of Deere and a separate corporate entity, is the actual manufacturer of the Accused Products and sells the Accused Products. Deere is the assignee of the Deere Patents on which Mr. Armas seeks to correct inventorship.

But regardless of which Deere entity is at issue, the development of the Accused Products and the research leading to the inventions claimed in the the Deere Patents all took place at JDCFC's facilities in Dubuque, Iowa—the epicenter of activity. Indeed, all of the inventors named in Deere's Patents reside in Dubuque, Iowa, which underscores the undeniable importance of the Northern District of Iowa to this case. Ex. A (Heine Decl.) ¶ 13. Further, the research, development, and subsequent prototyping that underpin the Accused Products took place primarily within the confines of JDCFC's Dubuque, Iowa facilities. Ex. A ¶¶ 7–12. Additionally, DDVLS's false advertising claim stems from JDCFC's marketing strategies and commercial practices, the vast majority of which originate from JDCFC's facilities in Dubuque, Iowa or Moline, Illinois. Ex. A ¶¶ 9, 18, 21; Ex. B. Moreover, Mr. Zupancic, who Plaintiffs repeatedly reference in the Complaint, resides in the LeClaire, Iowa, 81 miles away from Dubuque. Ex. A ¶ 14. Thus, the substantial repository of documents and evidence pivotal to this case is located in Iowa. Ex. A ¶¶ 7–18.

## III.      LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "A motion to transfer venue ***should be granted*** upon a showing that the

transferee venue 'is clearly more convenient' than the venue chosen by the plaintiff." *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). Courts considering a section 1404(a) transfer motion engage in a two-step analysis: (1) determine whether a plaintiff could have brought the action in the transferee venue and (2) weigh the private and public factors to determine whether transferring the case is appropriate. *See Osgood*, 981 F. Supp. 2d at 1263 (citing *Abbate v. Wells Fargo Bank, Nat'l Ass'n*, No. 09-62047-CIV, 2010 WL 3446878, at *4 (S.D. Fla. Aug. 31, 2010)). The private and public factors are: "(1) the convenience of the witnesses; (2) the location of [the] relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

## IV.   ARGUMENT

The Northern District of Iowa is the most convenient forum for the efficient resolution of this case. As explained below, Plaintiffs could have brought this lawsuit in the Northern District of Iowa, and each of the private- and public-interest factors either weighs in favor of transfer or is neutral. Thus, the Northern District of Iowa is "clearly [a] more convenient" forum, and transfer under section 1404(a) is appropriate. *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *1 (Fed. Cir. Nov. 15, 2021).

### A.   This Action Could and Should Have Been Brought in the Northern District of Iowa

As a first step, a court must determine whether the case could have been brought in the desired district of transfer. "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b); *Meterlogic, Inc. v. Copier Sols., Inc.*, 185 F. Supp. 2d 1292, 1299 (S.D. Fla. 2002).

Here, it is indisputable that Plaintiffs could and should have brought this action in the Northern District of Iowa. That district is the epicenter of activities for the Accused Products and the Deere Patents for three primary reasons. ***First***, the facilities in Dubuque, Iowa, are where JDCFC engineers primarily designed, developed, refined, and brought to fruition the technologies at issue, thus grounding the heart of this legal dispute firmly within the Northern District of Iowa.

Ex. A ¶¶ 6– 12, 14–18.

*Second*, Dubuque, Iowa is also the epicenter of the correction of inventorship claims because all of the inventors named in Deere's Patents reside and work there. The inventors, therefore, reside beyond the subpoena power of the Southern District of Florida, but are readily accessible within the subpoena power of the Northern District of Iowa. *See Wi-LAN USA, Inc. v. Apple Inc.*, No. 12-cv-24318, 2013 WL 1343535, at \*4 (S.D. Fla. Apr. 2, 2013) ("[C]ourts generally transfer cases when important witnesses cannot be compelled to testify in the forum, but could be subpoenaed in the transferee court."). Indeed, the correction of inventorship claims involve scrutinizing the contribution of these Iowa-based inventors to the Deere Patents. In fact, a correction of inventorship claim requires "clear and convincing evidence" of a contribution to the invention and ***communication*** of this contribution ***to the named inventors***. *See Meng v. Chu*, 643 F. App'x 990, 994 (Fed. Cir. 2016) ; *Pro Mktg. Sales, Inc. v. Securion Sys., Inc.*, No. 1:19-CV-00113, 2020 WL 5912351, at \*4 (D. Utah Oct. 6, 2020) (citing *In re VerHoef*, 888 F.3d 1362, 1366 (Fed. Cir. 2018)) (Plaintiff must "make a contribution to the claimed invention … and (3) ***do more than merely explain*** to the real inventors well-known concepts and/or the current state of the art."). This underscores the significance of the inventors' physical location, as proximity to these key individuals in Iowa is critical for accessing corroborating evidence.

*Third*, Dubuque, Iowa is also where marketing decisions, pricing strategies, and sales decisions were primarily made with respect to the Accused Products, making Dubuque, Iowa the epicenter of the false advertising claims.[2] This multi-dimensional aspect of the case also underscores the district's pertinence, as these intertwined claims call for a diverse range of evidence and witness testimonies, predominantly located in Iowa or the immediately surrounding Quad Cities area about 75 miles away from Dubuque, Iowa.

Therefore, both JDCFC and Deere are subject to jurisdiction in Iowa, venue is appropriate in the Northern District of Iowa, and both JDCFC and Deere are amenable to service of process in Iowa. *See Meterlogic*, 185 F. Supp. 2d at 1299.

---

[2]   Indeed, the alleged statements by Mr. Zupancic underpinning these claims are from a podcast "The Dirt," and an interview during the "2020 Con Expo Construction Trade Show," which happened in Las Vegas, Nevada, not Florida, further detaching this Court from the core activities in question. Dkt. 01, ¶¶ 17–18.

**B.** **The Private-Interest Factors Favor Transfer to the Northern District of Iowa**

An analysis of the facts shows that out of the seven private-interest factors, four factors favor transfer to the Northern District of Iowa and three factors are neutral or slightly in favor— no factors favor remaining in the Southern District of Florida. These factors establish that the Northern District of Iowa is more convenient than the Southern District of Florida for the efficient resolution of this case.

**1.** **Convenience of the Witnesses Strongly Favors Transfer**

It is black letter law that "[t]he convenience of the witnesses" is the "single most important factor in the transfer analysis." *In re Genentech, Inc.*, 566 F.3d at 1343–45; *see also Game Controller Tech. LLC v. Sony Comput. Ent. Am. LLC*, 994 F. Supp. 2d 1268, 1273 (S.D. Fla. 2014) (same). As the court explained in *Filtalert Corp. v. International Business Machines Corp.*, "'[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'" No. 15-22845-CIV-GAYLES, 2015 WL 9474640, at *2 (S.D. Fla. Dec. 29, 2015) (quoting *In re Genentech, Inc.*, 566 F.3d at 1343). And when weighing this factor, "a court does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum." *Osgood*, 981 F. Supp. 2d at 1264. Instead, "the court must qualitatively evaluate the materiality of the testimony that the witness[es] may provide." *Motorola Mobility, Inc*, 804 F. Supp. 2d at 1276–77 (quoting *Gonzalez v. Pirelli Tire, LLC*, No. 07-80453-CIV, 2008 WL 516847, at *2 (S.D. Fla. Feb. 22, 2008)).

Here, the JDCFC engineers responsible for the development of the Accused Products and the named inventors of the disputed Deere Patents are concentrated in Dubuque, Iowa. Moreover, Deere is headquartered in Moline, Illinois, just 75 miles away from Dubuque, Iowa. The chart below summarizes the work location of each of the inventors for the disputed Deere Patents:

| Inventor | Employer | Work Location | Patent No. |
|---|---|---|---|
| John Mahrenholz | JDCFC | Dubuque, Iowa | '557 Patent<br>'641 Patent<br>'547 Patent |

| Inventor | Employer | Work Location | Patent No. |
|----------|----------|---------------|------------|
| Brett Graham | JDCFC | Dubuque, Iowa | '557 Patent<br><br>'641 Patent<br><br>'243 Patent |
| Alex Vandegrift | JDCFC | Dubuque, Iowa | '557 Patent<br><br>'641 Patent |
| Nicholas Rokusek | JDCFC | Dubuque, Iowa | '557 Patent<br><br>'641 Patent |
| Christopher Meyer | JDCFC | Dubuque, Iowa | '557 Patent<br><br>'641 Patent |
| Walter Henson, II | JDCFC | Dubuque, Iowa | '557 Patent |
| Lance R. Sherlock | JDCFC | Dubuque, Iowa | '557 Patent |
| Nilesh T. Kumbhar | JDCFC | Dubuque, Iowa | '243 Patent |

Ex. A ¶ 17. The testimony of these inventors, along with sales and marketing employees located in Dubuque or the nearby Quad Cities area, are vital to every single alleged cause of action in this case—patent infringement, false advertising, and correction of inventorship of Deere's Patents. Ex. A ¶¶ 7–14. Moreover, Mr. Zupancic—on whom DDVLS relies for **both** the patent and false advertising claims—resides in Iowa, and his Iowa residency thus strongly supports transfer. Dkt. 01, ¶¶ 17–18; *see also* Dkt. 01-02. By contrast, there is no currently-identified defense witness located in the Southern District of Florida, and JDCFC does not have a place of business in Florida. Ex. A ¶¶ 15–16. Thus, the burden and expense of making Deere (and JDCFC's) witnesses available in this District—over 1,200 miles from Dubuque, Iowa—will be substantially higher than if the case were to proceed in the Northern District of Iowa. Ex. A ¶¶ 20–21; *see In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *5 (Fed. Cir. Aug. 2, 2021) ("[An] analysis discounting the

inconvenience to [party] witnesses is fundamentally at odds with the purpose of a transfer for convenience of the witnesses ….").

Indeed, only one identified witness appears to have any real tie to this district: Mr. Armas. However, Mr. Armas' convenience does not outweigh the substantial inconvenience to virtually every other identifiable witness in the case, particularly where the primary locus of witnesses and evidence is concentrated in or near Iowa and supports transfer. *See Game Controller Tech.*, 994 F. Supp. 2d at 1274 (favoring transfer where "there are a substantial number of witnesses residing in the transferee venue who would be unnecessarily inconvenienced by having to travel away from home") (quoting *In re Genentech*, 566 F.3d at 1344).

Indeed, this Court has recognized that the financial or logistical burdens faced by even a corporate plaintiff ***or its alleged key figures*** should not unduly influence the decision to deny transfer where the other factors clearly favor transfer. *See Moghaddam v. Dunkin Donuts, Inc.*, 2002 WL 1940724, at *1 (S.D. Fla. Aug. 13, 2002) (finding this factor weighed in favor of transfer where the plaintiffs "stated that they would incur significant additional expenses, experience disruption in the operation of their businesses, and be inconvenienced" and explaining that "the relative bargaining power and financial positions of the parties can be a significant factor in a transfer decision" but "alone cannot defeat transfer where, as here, the other factors clearly favor transfer"); *see also Carucel Invs., L.P. v. Novatel Wireless, Inc.*, 157 F. Supp. 3d 1219, 1227–28 (S.D. Fla. 2016) ("[T]he Court is ***not*** persuaded that the monetary obligation or inconvenience to a corporate plaintiff, and/or ***its president***, weighs in favor of denying transfer.").[3] Here, DDVLS "is a corporate plaintiff" and "[a]lthough the Court [might be] certainly sympathetic to any potential additional cost to Plaintiff, the Court [should] ***not*** [be] persuaded that the monetary obligation or inconvenience to a ***corporate plaintiff, and/or its founders***, weighs in favor of denying transfer." *MindbaseHQ LLC v. Google LLC*, No. 20-CV-24742, 2021 WL 1923142, at *6 (S.D. Fla. May 13, 2021). Moreover, DDVLS has not identified any potential witnesses within this District with knowledge of either DDVLS's alleged lost sales or consumers misled by Deere's alleged false or misleading advertising. Dkt. 01 ¶ 38.

---

[3]   Mr. Armas is only an individual Plaintiff in this matter because of his correction of inventorship claim, which as discussed in Deere's concurrently-filed Motion to Dismiss, lacks any allegations of communication between Mr. Armas and the Deere inventors and is thus tenuous and unsupported. An unsupported and legally deficient claim is insufficient to prevent a motion to transfer.

Therefore, this factor strongly favors transfer to the Northern District of Iowa.

**2.     The Location of Documents and Other Sources of Proof Favors Transfer**

"In patent infringement cases, the bulk of the relevant evidence usually comes from ***the accused infringer***," and therefore "the place where the ***defendant's*** documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020). Indeed, this factor remains relevant when physical machinery evidence is at issue, despite technological advances having made electronic document production commonplace. *See Innovative Patented Tech. LLC v. Icon Health & Fitness, Inc.*, No. 08-CV-80080, 2008 WL 11331996, at *4 (S.D. Fla. July 15, 2008) (holding that indeed "technological advancements in document imaging, management, and retrieval have made this factor generally less significant for the Court's consideration," however "this factor weighs in Defendant's favor," because "evidence will include large exercise machines which will need to be presented in Court").

Here, the heart of the defense's documentary evidence—design records, internal communications, development logs, and prototype testing results—resides within JDCFC's facilities, specifically, Dubuque Works, in Dubuque, Iowa. Additionally, documents and information related to the sale and marketing of the Accused Products are located within JDCFC's facilities in Dubuque, Iowa or Moline, Illinois (approximately about 75 miles from Dubuque, Iowa). Ex. A ¶ 17. Thus, this factor favors transfer.

Moreover, the sources of proof in this case are not limited solely to documents that are easily transferrable. Indeed, as evidenced by Plaintiffs' already-propounded discovery, Plaintiffs have requested many instances of "tangible things." For example, Plaintiffs' Request for Production No. 1 requests that Deere produce "[a] representative sample of ***each Deere Product*** [333G and SG96], produced as received by customers, with all packaging, accessories, instructions, and product materials that customers receive." Ex. C (02/09/2024 Plaintiff's Request for Production). Indeed, Plaintiffs broadly define "Deere Product" to include "***any products***, ***commercial or experimental***, including ***past and present versions*** of said products and ***versions still under development***, that embody one or more invention(s) shown, described, or claimed in the Deere Patents." *Id*. Plaintiffs' demand that Deere produce representative samples of ***each*** Accused Product (as Plaintiffs broadly define to include past and previous versions, versions under development, and experimental versions) raises significant logistical challenges and unfairly

burdens Deere.[4] Indeed, should the Court or the Parties find it necessary to bring the Accused Products to a future hearing (*e.g.*, the *Markman* hearing) or trial, the size and weight of the Accused Products will pose substantial difficulties. Here, the DDVLS V-Loc System, essentially an add-on to a dozer, spans an overall width of 74–98 inches, depth of 38 inches, and weighs between 1,510–1,640 pounds. Ex. D (V-Loc System Manual). This contrasts significantly with the Accused Products, which are more substantial both in size—with a width of 96 inches, length of 155 inches, and height of approximately 86.7–132 inches—and weight of approximately 14,000 pounds. Ex. A ¶ 19; Ex. E (331G/333G Specifications). This stark difference underscores the logistical challenges and inefficiencies of transporting the Accused Products—larger, heavier machinery—over a distance exceeding 1,200 miles from their place of development in Dubuque, Iowa. *See Innovative Patented Tech. LLC*, 2008 WL 11331996, at *4 (holding that "this factor weighs in Defendant's favor," because "evidence will include large exercise machines which will need to be presented in Court").

Therefore, this factor also favors transfer.

### 3.      The Convenience of the Parties Strongly Favors Transfer

A venue closer to a party's headquarters, witnesses, and relevant documents is a more convenient venue for that party. *See, e.g.*, *Innovative Patented Tech.*, 2008 WL 11331996, at *4. As discussed in Section IV.B.1, all of Deere's potential witnesses are outside of this District and located within or close to the Northern District of Iowa. Thus, the convenience of litigating close to the epicenter of the relevant accused activities in Iowa is paramount.

According to the Complaint, DDVLS and Mr. Armas are primarily based in Florida. However, any inconvenience to Plaintiffs from transferring to Iowa must be considered and weighed against convenience to defendant. *See Rothschild Connected Devices Innovations v. The Coca-Cola Co.*, No. 15-24067, 2016 WL 1546427, at *6 (S.D. Fla. Apr. 15, 2016). DDVLS, a relatively small entity, and Mr. Armas, the sole inventor of the '300 Patent and the President of DDVLS, would face less logistical challenges litigating in Iowa compared to the number of defense witnesses identified in the Complaint and discovery to date, including all the inventors of the Deere Patents, individuals involved in development of the Accused Products, and others at Deere or JDCFC with the knowledge DDVLS seeks in discovery. Moreover, although DDVLS is

---

[4]    Deere is evaluating its position in response to Plaintiffs' Request.

not large, "it is a corporate plaintiff, not an individual" and "[a]lthough the Court is certainly sympathetic to any potential additional cost to Plaintiff, the Court is *not persuaded that the monetary obligation or inconvenience to a corporate plaintiff, and/or its founders, weighs in favor of denying transfer*." *MindbaseHQ LLC*, 2021 WL 1923142, at *6. Further, while Mr. Armas is indeed a Plaintiff in his individual capacity, his role as the founder and current President of DDVLS makes him closer to a corporate representative, and this Court has previously recognized that the financial or logistical burdens faced by a corporate plaintiff, or its key figures, should not unduly influence against transfer. *See Carucel Invs., L.P.*, 157 F. Supp. 3d at 1227–28 ("[T]he Court is *not* persuaded that the monetary obligation or inconvenience to a corporate plaintiff, and/*or its president*, weighs in favor of denying transfer.").

Therefore, any inconvenience to Plaintiffs is outweighed by the inconvenience of litigating in Florida for Deere given the number of potentially relevant witnesses and employees.

### 4.    The Locus of Operative Facts Strongly Favors Transfer

The locus of operative facts, or "center of gravity," is where the principal events of the case occurred. *Carucel Invs., L.P.*, 157 F. Supp. 3d at 1225. For patent infringement cases, that "is where the accused product was designed and developed." *Motorola Mobility, Inc.*, 804 F. Supp. 2d at 1276. And "[t]he district court ought to be as close as possible to the milieu of *the infringing device* and the hub of activity centered around *its production*. For that reason, district courts may *disregard plaintiff's choice* of forum in cases involving claims of patent infringement." *Trace-Wilco, Inc. v. Symantec Corp.*, No. 08-CV-80877, 2009 WL 455432, at *2–3 (S.D. Fla. Feb. 23, 2009).

Here, as discussed in Section IV.B.1, the research and development for the Accused Products and disputed Deere Patents are inextricably linked to JDCFC's facilities in Dubuque, Iowa. Moreover, most of the inventors responsible for the technology development in question are based there. Ex. A ¶ 13. The centrality of these activities to the Northern District of Iowa underscores the district's role as the "center of gravity," or "locus of operative facts."

Moreover, the claims of inventorship and false advertising are intrinsically linked to the development and marketing efforts undertaken at the Iowa facilities, as well as the strategic

activities based out of JDCFC's facilities in nearby Moline, Illinois (Ex. A ¶¶ 9, 14, 18)—one bridge away from the State of Iowa. *See* Ex. B; Ex. A ¶ 21.[5]

Indeed, this Court has held that where there are "multiple loci of operative facts," courts should "attempt to determine if there is ***one primary locus*** with the strongest connection to the operative facts." *Clinton v. Sec. Benefit Life Ins. Co.*, No. 19-CV-24803, 2020 WL 6120565, at *6 (S.D. Fla. June 29, 2020), *report and recommendation adopted*, 2020 WL 6120554 (S.D. Fla. July 21, 2020). And as discussed, courts indeed focus on the accused products in patent cases. Here, the primary locus of the operations with respect to all the Accused Products and the false advertising and correction of inventorship issues is in the Northern District of Iowa.[6] Therefore, this factor also significantly favors transfer to the Northern District of Iowa.

### 5.     The Ability of Process to Compel the Attendance of Unwilling Witnesses Is Neutral or Slightly Favors Transfer

Courts also consider whether "either party will be deprived of live testimony of any witness due to an individual's distance from either forum." *See Trinity Christian Ctr. Of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1329 (M.D. Fla. 2010). Federal courts in Florida "cannot compel any unwilling witness residing outside of Florida to testify." *Stokes v. Markel Am. Ins. Co.*, No. 19-CV-20404, 2019 WL 8017457, at *4 (S.D. Fla. June 28, 2019) (citing Federal Rule of Civil Procedure 45). To assess this element, a party must identify its witnesses and indicate the substance of its witnesses' testimony. *See Trinity Christian Ctr.*, 761 F. Supp. 2d at 1328–29 (citing *Mason v. SmithKline Beecham Clinical Lab'ys*, 146 F. Supp. 2d 1355, 1362 (S.D. Fla. 2001)).

This case is in its early stages and neither party has identified any witness who will be unavailable to testify in either District. However, as discussed previously, defense's potential witnesses—the engineering and marketing teams responsible for the research, design, engineering, marketing, and sales of the Accused Products and the invention of the Deere Patents—are

---

[5]   Further, David's Dozer did not allegedly showcase its technology to Deere in Florida, but rather these demonstrations occurred at the Topcon Roadshow in Oklahoma City, Oklahoma, even further from Florida. Dkt. 01, ¶ 12. In addition, the allegations rooted in Mr. Zupancic's statements stem from his appearances on "The Dirt" podcast and an interview at the "2020 Con Expo Construction Trade Show" in Las Vegas, Nevada. Dkt. 01, ¶¶ 17–18.

[6]   To the extent that Plaintiffs argue that some of the Accused Products are sold in Florida, that fact does not change the issue that the "one ***primary locus with the strongest connection*** to the operative facts" in this case is in Iowa. *Id.* at *6.

primarily located in or near Iowa. Moreover, there are no Deere facilities in this District that partake in the design, development, manufacturing, marketing, sale, or decision-making related to the 333G and SG96, and none of the inventors of the Deere Patents or JDCFC employees engaged in the research and development activities for the 333G or SG96 reside in this District. Ex. A ¶¶ 15–16. Plaintiffs also have not identified any potential third-party witnesses that reside in Florida or would otherwise be subject to this Court's compulsory powers. *See Harman v. Taurus Int'l Mfg., Inc.*, No. 21-CV-20451, 2021 WL 5176510, at *4 (S.D. Fla. Oct. 18, 2021) (factor weighs in favor of transfer despite "Defendants hav[ing] not identified any witnesses who would be unwilling to travel").

Thus, this factor is either neutral or slightly favorable.

### 6. The Relative Means of the Parties Is Neutral

"Although the Court is certainly sympathetic to any potential additional cost to Plaintiff, the Court is ***not*** persuaded that the monetary obligation or inconvenience to a ***corporate plaintiff***, and/or its ***founders***, weighs in favor of denying transfer." *MindbaseHQ LLC*, 2021 WL 1923142, at *6. Here, DDLVS is a corporation, and Mr. Armas is the founder, President, and CEO of his company. This Court has previously recognized that the financial or logistical burdens faced by a corporate plaintiff, or its key figures, should not unduly influence the decision to deny a transfer. *See Carucel Invs., L.P.*, 157 F. Supp. 3d at 1227–28 ("the Court is ***not*** persuaded that the monetary obligation or inconvenience to a corporate plaintiff, and/***or its president***, weighs in favor of denying transfer.").[7]

Further, it is imperative to emphasize the logistical and operational challenges to defendant from having "to litigate in a distant forum." *Stokes*, 2019 WL 8017457, at *5. Here, Deere and JDCFC would face significant logistical hurdles if required to litigate in the Southern District of Florida, including transporting numerous witnesses across the country and even bringing representative samples of the Accused Products to this District. Ex. A ¶ 19; Ex. C. Indeed, given the distance to Miami and the fact that there is no direct flight between Dubuque, Iowa, and Miami, Florida, requiring numerous Deere and JDCFC witnesses to be dragged to Miami from Dubuque

---

[7]   As discussed, Mr. Armas' correction of inventorship claim is not viable because he fails to plead any communications or collaboration with the Deere inventors, and as such, the inconvenience issue to an individual plaintiff is even less relevant. Moreover, public records show that DDVLS has more than $5.4M in revenue, confirming that it is a successful company with the means for travel. Ex. F (Kona Equity – David's Dozer V-Loc System Website).

would result in substantial disruption to their work schedules. Indeed, Deere (and JDCFC's) involvement in diverse areas of manufacturing and innovation means that diverting their staff to a distant trial location would not only entail considerable travel and logistical coordination, but also potentially impact their ongoing operations and innovation efforts. The distance of over 1,200 miles between the defense's primary operational hubs and the Southern District of Florida exacerbates these challenges. Therefore, this factor is neutral.

### 7. The Weight Accorded a Plaintiff's Choice of Forum Is Neutral or Slightly in Favor of Transfer

"[W]here the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration." *Motorola Mobility*, 804 F. Supp. 2d at 1276. In fact, courts regularly transfer patent infringement actions when the plaintiff has chosen a forum that is not the "center of gravity of the accused activity." *See, e.g.*, *Trace–Wilco*, 2009 WL 455432, at *2–3 (noting that "[i]n patent infringement actions, the preferred forum is that which is ***the center of gravity of the accused activity***," and holding that a court may "disregard plaintiff's choice of forum in cases involving claims of patent infringement"); *Rothschild Storage Retrieval Innovations, LLC v. Sony Mobile Commc'ns (USA) Inc.*, No. 14-CIV-22652, 2015 WL 224952, at *5 (S.D. Fla. Jan. 15, 2015); *Canopies, Inc. v. Country Lane Gazebos, LLC*, No. 13-80239-CIV, 2013 WL 9827411, at *2 (S.D. Fla. June 14, 2013) (transferring patent infringement case to venue where "Defendants maintain[] their offices and where the accused products in th[e] action were designed and developed").

Here, as noted *supra*, the gravity of the operative facts underlying the causes of action for patent infringement and false advertising occurred in Iowa, not Florida. The research and development for both the 333G and the SG96 were conducted predominantly in Dubuque, Iowa, and all inventors of the disputed Deere Patents work in Dubuque, Iowa. Further, given that Mr. Armas does not have a viable claim for correction of inventorship as demonstrated in the concurrently-filed Motion to Dismiss, the choice of forum by Mr. Armas should be given less weight. Thus, the Northern District of Iowa is the venue where the operative facts of this litigation and this matter's "center of gravity" are located. Indeed, this Court has repeatedly given this factor less deference "when the operative facts underlying the action occurred outside the district chosen by the plaintiff." *Moghaddam v. Dunkin Donuts, Inc.*, No. 02-60045-CIV, 2002 WL 1940724, at *3 (S.D. Fla. Aug. 13, 2002). Thus, this factor is neutral or slightly weighs in favor of transfer.

-13-

### C.     The Public-Interest Factors Favor Transfer to the Northern District of Iowa

Public interest factors include (1) the chosen forum's familiarity with governing law and (2) trial efficiency and the interests of justice. *See Manuel*, 430 F.3d at 1135 n.1. An analysis of the facts shows that out of the two public-interest factors, one factor favors transfer to the Northern District of Iowa and one factor is neutral. No factor favors Southern District of Florida. Thus, the Northern District of Iowa is more convenient than the Southern District of Florida for the efficient resolution of this case.

### 1.     The Forum's Familiarity with the Governing Law Is Neutral

The forum's familiarity with the governing law is "one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are involved." *Clinton*, 2020 WL 6120565, at \*7 (quoting *Posven, C.A. v. Liberty Mut. Ins*. Co., 303 F. Supp. 2d 391, 405 (S.D.N.Y. 2004)). This factor is often neutral because federal courts are familiar with federal law and have little trouble applying the law of other states. *Id*.

Here, the action is grounded in federal patent law, specifically under 35 U.S.C. § 256 and 35 U.S.C. § 271, as well as Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). Dkt. 01, ¶ 1. Both the Southern District of Florida and the Northern District of Iowa are familiar with the applicable legal framework. Accordingly, this factor "does not weigh against transfer." *See Rothschild Connected Devices Innovations, LLC*, 2016 WL 1546427, at \*7.

### 2.     The Interest of Justice and Judicial Economy Favor Transfer

Finally, the Court should assess whether the interests of justice and judicial economy favor transfer. For this final factor, courts weigh several subfactors, such as "administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home," "and the unfairness in imposing jury duty on citizens in an unrelated forum." *Id*. In determining whether transfer is justified, courts consider the relative docket congestion in the competing forums. *Morrissey v. Subaru of Am., Inc*., No. 1:15-CV-21106, 2015 WL 9583278, at \*4 (S.D. Fla. Dec. 31, 2015) ("While the [requested district] no doubt has a heavy case load, the Southern District of Florida has one of the busiest dockets in the country.").

Here, the more readily available resources in the Northern District of Iowa favor transfer. According to LexMachina, the Southern District of Florida currently manages a heavy caseload, with as many as 6,064 open cases, in contrast to the Northern District of Iowa's lighter docket of 333 open cases. Exs. G, H (LexMachina Open Cases). This disparity in docket congestion—this

District shouldering a caseload over ten times heavier than the Northern District of Iowa—underscores the practical benefits of transferring this case. Moreover, the Hon. Judge Cecilia M. Altonaga is currently responsible for managing a docket of 236 open cases in the Southern District of Florida, Ex. I (LexMachina Open Cases), while Judge Charles Joseph Williams (the judge with the highest number of open cases in the Northern District of Iowa) currently only oversees 82 open cases. Ex. J (LexMachina Open Cases). Thus, the judicial caseload numbers in Iowa supports transfer, which is aligned with the interests of judicial efficiency and resource allocation.

Ultimately, the public interest factors and the interests of justice favor transfer. The center of the alleged infringement, related parties, and the community with the most interest in this matter is not the Southern District of Florida. *See Trace-Wilco*, 2009 WL 455432, at *4 (finding that transfer would serve the interests of justice where the center of the accused activity occurred in the transferee district); *ShadeFX Canopies, Inc.*, 2013 WL 9827411, at *3 ("[A] number of federal courts have considered this factor [the interests of justice] decisive–outweighing the other statutory factors"). Thus, this factor weighs in favor of transfer.

## V.    CONCLUSION

For all of the foregoing reasons, Deere respectfully requests that this case be transferred to the Northern District of Iowa.

### CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(a)(3), counsel for Defendant conferred in writing with Plaintiffs on February 28, 2024, of the basis for relief sought, to which Plaintiffs responded that they oppose the relief requested.

Dated: March 1, 2024                         Respectfully submitted,

*/s/ Yimeng Dou*                             */s/ Jorge Espinosa*
_____                      _____

Gregg F. LoCascio, P.C.                      Jorge Espinosa
(*admitted pro hac vice*)                    Florida Bar No. 779032
Nathan S. Mammen                             jorge.espinosa@gray-robinson.com
(*admitted pro hac vice*)                    Francesca Russo
KIRKLAND & ELLIS LLP                         Florida Bar No. 174912
1301 Pennsylvania Avenue, N.W.               franscesca.russon@gray-robinson.com
Washington, D.C. 20004                       GRAYROBINSON, P.A.
T: (202) 389-5000                            333 S.E. 2nd Ave., Suite 3200
F: (202) 389-5200                            Miami, FL 33131
gregg.locascio@kirkland.com                  Tel: 305-416-6880
nathan.mammen@kirkland.com                   Fax: 305-416-6887

Brandon H. Brown, P.C.
(*admitted pro hac vice*)                    ATTORNEYS FOR DEFENDANT
KIRKLAND & ELLIS LLP                         DEERE & COMPANY
555 California Street
San Francisco, CA 94104
T: (415) 439-1400
F: (415) 439-1500
bhbrown@kirkland.com

Yimeng Dou
(*admitted pro hac vice*)
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
T: (213) 680-8400
F: (213) 680-8500
yimeng.dou@kirkland.com

Yungmoon Chang
(*admitted pro hac vice*)
KIRKLAND & ELLIS LLP
2049 Century Park East
Suite 3700
Los Angeles, CA 90067
T: (310) 552 4200
F: (310) 552 5900
yungmoon.chang@kirkland.com