UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-24931-CIV-ALTONAGA/Reid

**DAVID'S DOZER V-LOC
SYSTEM INC.**, *et al.*,

      Plaintiffs,
v.

**DEERE & COMPANY**, *et al.*,

      Defendants.
_____/

# ORDER

**THIS CAUSE** came before the Court on Defendants, Deere & Company ("Deere"); John Deere Construction and Forestry Company ("JDCFC"); Dobbs Equipment, LLC; and EFE, Inc. *doing business as* Everglades Equipment Group's Motion to Sever and Transfer Claims Against Defendants Deere & Company and [JDCFC] to the Northern District of Iowa and Stay Claims Against Defendants Dobbs Equipment, LLC and Everglades Equipment Group [ECF No. 70], filed on April 24, 2024.  Plaintiffs, David's Dozer V-Loc System Inc. and David Armas, filed a Response [ECF No. 73] in opposition; to which Defendants filed a Reply [ECF No. 88].  The Court has carefully reviewed the Second Amended Complaint ("SAC") [ECF No. 57], the parties' written submissions, the record, and applicable law.

## I.  BACKGROUND

This is an action involving claims of patent infringement, false advertising, and correction of inventorship.  (*See* SAC ¶¶ 1; 32–65).  Plaintiff, David Armas, is the sole inventor of United States Patent No. 10,533,300 (the "'300 Patent"), which is owned by Plaintiff, David's Dozer.  (*See id.* ¶¶ 1, 10–11).  The '300 Patent covers Plaintiffs' earth-grading technology.  (*See id.* ¶ 19).

This technology involves a particular method of "hydraulically lock[ing]" a compact track loader's ("CTL['s]") boom arm in a downward position while a user operates an attachment, such as a dozer blade. (*Id.* (alteration added)). Plaintiffs allege two of Defendant, JDCFC's products — 333G SmartGrade<sup>TM</sup> Compact Track Loader ("333G") and SmartGrade<sup>TM</sup> six-way dozer blade attachment ("SG96") — practice the method covered by the '300 Patent without authorization, in direct and indirect infringement of the '300 Patent. (*See id.* ¶¶ 27, 30).

JDCFC is a wholly owned subsidiary of Defendant Deere. (*See* Mot., Ex. A, Heine Decl. [ECF No. 70-2] ¶ 1). Deere is headquartered in Moline, Illinois. (*See id.* ¶ 5). Both allegedly infringing products were developed in JDCFC's facilities in Dubuque, Iowa — 76 miles away from Moline. (*See* Mot. 10; Heine Decl. ¶¶ 9–13).[1] The research, development, prototyping, experimentation, invention, and marketing of the allegedly infringing products all occurred in Dubuque. (*See generally* Heine Decl.). In addition to the JDCFC employees who worked on these products, Deere hired third-party contractors to assist with the products' development, at least one of whom resides only 20 miles from Dubuque. (*See* Heine Decl. ¶ 16; Mot. 13). By contrast, the '300 Patent was developed in Florida, where Plaintiffs are citizens. (*See* SAC ¶ 2, Resp., Ex. 1, Armas Decl. [ECF No. 73-1] ¶ 4)

Plaintiffs bring direct and indirect patent infringement claims against Defendants under 35 U.S.C. sections 271(a)–(c). (*See* SAC ¶¶ 32–47). In the alternative, Plaintiffs allege JDCFC violated the Lanham Act, 15 U.S.C. section 1125(a)(1)(B), through false or misleading advertising, involving statements from JDCFC's product marketing manager Gregg Zupancic that the 333G could "hydraulically lock the vehicle's boom arm to the frame of the vehicle[.]" (SAC ¶ 24 (alterations added); *see also id.* ¶¶ 22–26, 48–59). Finally, Plaintiffs seek a declaratory judgment

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

declaring Armas a joint inventor of the Deere Patents under 35 U.S.C. section 256. (*See id.* ¶¶ 60–65).

Plaintiffs first filed this case on December 29, 2023, against Deere alone. (*See generally* Compl. [ECF No. 1]). On March 1, 2024, Defendant, Deere filed a Motion to Transfer Venue to the Northern District of Iowa [ECF No. 31] arguing the case's "center of gravity," or "locus of operative facts" was in Iowa because the accused products were designed and built there. (*Id.* 15; *see generally id.*). Two weeks later, Plaintiffs filed an Amended Complaint adding Defendants JDCFC (together with Deere, the "Deere Defendants") and two of JDCFC's licensed and authorized dealerships in South Florida — Dobbs Equipment, LLC and Everglades Equipment Corporation (together, the "Dealer Defendants")[2] — to the lawsuit. (*See generally* Am. Compl. [ECF No. 37]; SAC ¶ 27). The Dealer Defendants each offer the 333G and SG96 for sale throughout Florida, including in this District. (*See* SAC ¶ 27).

Deere and the new Defendants now move to transfer the case to the Northern District of Iowa because it is the "site of the alleged acts" — not the Southern District of Florida. (Mot. 9). Defendants also move the Court to sever the claims against the Dealer Defendants from the claims against the Deere Defendants and stay the claims against the Dealer Defendants pending the outcome of the case. (*See id.* 8–9). Alternatively, the Dealer Defendants also consent to transfer to the Northern District of Iowa. (*See id.* 8 n.1).

---

[2] Shortly after filing their Amended Complaint, Plaintiffs filed a Motion for Leave to File Second Amended Complaint [ECF No. 47] because they discovered the properly named party is EFE, Inc. d/b/a Everglades Equipment Group — not Everglades Equipment Corporation, which is an entirely separate entity unrelated to this case. (*See id.*). The Court granted Plaintiffs' Motion (*see* Mar. 29, 2024 Order [ECF No. 52]), and Plaintiffs filed their Second Amended Complaint on March 29, 2024 (*see generally* SAC).

3

CASE NO. 23-24931-CIV-ALTONAGA/Reid

## II.  LEGAL STANDARD

Venue in a civil action brought in a district court of the United States exists in the following settings:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).  Additionally, "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." *Id.* § 1400(b) (alteration added).

A court may transfer a civil action to a different venue "[f]or the convenience of parties and witnesses, in the interest of justice . . ." *Id.* § 1404(a) (alterations added).  "The standard for transfer under 28 U.S.C. [section] 1404(a) leaves much to the broad discretion of the trial court[.]" *Osgood v. Disc. Auto Parts, LLC*, 981 F. Supp. 2d 1259, 1263 (S.D. Fla. 2013) (alterations added; citing *Brown v. Connecticut Gen. Life Ins. Co.*, 934 F.2d 1193, 1197 (11th Cir. 1991)).  The movant bears the burden "to establish that another district is a more convenient forum than the plaintiff's chosen forum." *Id.* (citations omitted).

Courts engage in a two-pronged analysis to determine whether a case should be transferred to another district under section 1404(a).  *See Hight v. U.S. Dep't of Homeland Sec.*, 391 F. Supp. 3d 1178, 1183 (S.D. Fla. 2019).  First, a court must determine whether the action "could have been brought in the alternative venue." *Id.* (citation omitted).  Second, the court must assess whether "convenience and the interest of justice require transfer." *Id.* (quotation marks and citation omitted).

4

In determining whether convenience and the interest of justice require transfer, the court weighs various private and public interest factors. *See id.* (citation omitted). These factors include:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Id.* (quoting *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)).

### III. DISCUSSION

The Court walks through the section 1404(a) two-pronged analysis. The undersigned first finds that this case could have been brought in the Northern District of Iowa, and then determines that the private and public interest factors warrant transfer. Consequently, the Court grants Defendants' Motion in part. Because all Defendants consent to transfer, the case is transferred in its entirety, and the Court need not reach the issue of severance.

**A. The Action Could Have Been Brought in the Northern District of Iowa**

An action could have been brought in the transferee district "if that district has subject matter jurisdiction over the action, venue is proper, and the parties are amenable to service of process in the transferee forum." *Hight*, 391 F. Supp. 3d at 1183–84 (quotation marks and citations omitted).

Defendants contend this lawsuit could have been brought in the Northern District of Iowa because Dubuque, Iowa is the "epicenter of activity for each of Plaintiffs' claims" — that is, where the JDCFC engineers developed the allegedly infringing products; where the marketing decisions were made; and where the inventors of the Deere Patents reside and work. (Mot. 11; *see also id.* 11–12). Additionally, Deere is headquartered in Moline, Illinois, which is only 76 miles from

Dubuque. (*See id.*). Plaintiffs disagree, insisting they could not have brought their claims against Defendants, Dobbs Equipment LLC and Everglades Equipment Group in the Northern District of Iowa; and yet, because these Defendants consent to jurisdiction and venue there, Plaintiffs must concede the issue. (*See* Resp. 6); *see also Game Controller Tech. LLC v. Sony Comput. Ent. Am. LLC*, 994 F. Supp. 2d 1268, 1273 (S.D. Fla. 2014) ("Venue is proper because . . . [the defendant] consented to venue" in the forum (alterations added)).

Finding the first prong satisfied, the Court turns to the factors under the second prong.

### B.  Private and Public Interest Factors

Defendants argue the convenience of the witnesses, location of evidence, convenience of the parties, and locus of operative facts all strongly weigh in favor of transfer to the Northern District of Iowa, while the remaining factors are either neutral or weigh slightly in favor of transfer. (*See generally* Mot.). Plaintiffs, naturally, disagree. (*See generally* Resp.). The Court considers each factor in turn, and concludes the factors, on balance, support transfer.

#### 1.  Convenience of Witnesses

Defendants argue the Northern District of Iowa would be more convenient for witnesses than South Florida because "almost all witnesses with material information reside in Dubuque, Iowa." (Mot. 12). According to Defendants, "[t]he convenience of the witnesses is the single most important factor in the transfer analysis." (*Id.* 12 (alteration added; citing *In re Genentech, Inc.*, 566 F.3d 1338, 1343–45 (Fed. Cir. 2009); other quotation marks and citation omitted)). Plaintiffs contend Defendants overstate the importance of this factor and argue, in any event, the factor weighs against transfer. (*See* Resp. 8). The Court agrees with Defendants: convenience of the witnesses is indeed an important factor and skews in favor of transfer.

While Plaintiffs argue only non-party witnesses should be at issue in evaluating this factor, courts consider "[t]he convenience of *both* the party and non-party witnesses[.]" *Osgood*, 981 F. Supp. 2d at 1264 (alterations and emphasis added; quotation marks and citation omitted). Defendants make a convincing showing that the bulk of the witnesses would be inconvenienced by litigating in the Southern District of Florida. (*See* Mot. 12–15). The employees involved in inventing, marketing, and producing the allegedly infringing products are mostly based in or near the Northern District of Iowa — where the alleged infringement originated. (*See id.*). These include all eight named inventors of the disputed Deere Patents; JDCFC's product marketing manager, Mr. Zupancic, whom Plaintiffs identify as responsible for their patent and false advertising claims; and other pertinent employees. (*See id.*).

Plaintiffs address certain non-party witnesses who reside in California, Nevada, and Oklahoma, arguing these witnesses would be greatly inconvenienced if litigation were to proceed in Iowa rather than South Florida. (*See* Resp. 10). The Court disagrees. Tellingly, Plaintiffs do not identify any potential non-party witnesses in the Southern District of Florida who would be significantly more inconvenienced by litigating in Iowa than in Florida. (*See generally* Resp.).[3] The California, Nevada, and Oklahoma non-party witnesses are geographically closer to Iowa than they are to South Florida. Plaintiffs lament there are no direct flights to Dubuque, Iowa,[4] making litigation in Iowa more burdensome for those non-party witnesses than litigating in Florida. (*See*

---

[3] In contrast, Defendants identify at least one non-party witness located within 20 miles from the Dubuque courthouse. (*See* Mot. 13).

[4] Defendants represent that the airport nearest to the United States Courthouse in Cedar Rapids — the closest court to Dubuque — services non-stop flights to Miami, Fort Lauderdale, and Las Vegas. (*See* Mot. 15 n.8).

7

*id.*).[5] But, "[r]egardless of the ultimate trial forum, witnesses may have to travel." *Soler v. Indymac Mortg. Servs.*, 14-cv-22541, 2015 WL 3952620, at *2 (S.D. Fla. June 29, 2015) (alteration added). As was the case in *Soler*, the convenience of the non-party witnesses located outside both Districts does not favor either forum. *See id.*

Even if the Court were to side with Plaintiffs on the question of the convenience of the non-party witnesses, it "must qualitatively evaluate the materiality of the testimony that the witness may provide" rather than "merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum." *Osgood*, 981 F. Supp. 2d at 1264 (quotation marks and citations omitted). The inventors of the allegedly infringing products and the Deere Defendants' marketing employees arguably will offer the most material testimony to Plaintiffs' patent infringement and false advertising claims. *See Trace-Wilco, Inc. v. Symantec Corp.*, No. 08-80877-Civ, 2009 WL 455432, at *4 (S.D. Fla. Feb. 23, 2009) (granting transfer to the venue where "most of the witnesses that will be knowledgeable about the infringement issues are located" (emphasis omitted)). Litigating in Iowa is thus significantly less burdensome to the witnesses with the most material testimony than is litigating in South Florida. (*See* Mot. 12–15). The convenience of the witnesses therefore strongly favors transfer to the Northern District of Iowa.

### 2. The Location of Relevant Documents and the Ease of Access to Proof

Defendants next argue that because their evidence — including machines weighing 14,000 pounds — resides in Dubuque, Iowa, or Moline, Illinois (76 miles from Dubuque), the location of

---

[5] Plaintiffs also argue that litigating in the Northern District of Iowa is inconvenient for Defendants' employee-witnesses, since the nearest courthouse to Dubuque is in Cedar Rapids, Iowa — 80 miles from Dubuque and 90 miles from Moline, Illinois, where Deere is headquartered. (*See* Resp. 10–11). Defendants disagree (*see* Mot. 15 n.8), as does the Court. Travelling 90 miles is obviously more convenient than travelling one thousand-plus miles, across several states, to South Florida.

evidence and sources of proof weigh in favor of transfer to the Northern District of Iowa. (*See id.* 15–16).[6] Plaintiffs insist that since Defendants distribute the accused products in this District, Defendants can easily transport the machinery to Miami through the existing distribution chain. (*See* Resp. 12–13). According to Plaintiffs, this factor weighs against transfer because it would be "far more inconvenient" for David's Dozer to transport its V-Loc system to Cedar Rapids, Iowa than it is for Defendants to transport their machinery to Miami. (*Id.* 13).

Plaintiffs fail to persuade. First, at least one court in this Circuit has rejected an argument similar to Plaintiffs' regarding the shipment of allegedly infringing products. *Cf. Polyform A.G.P. Inc. v. Airlite Plastics Co.*, No. 10-cv-43, 2010 WL 4068603, at *4 (M.D. Ga. Oct. 15, 2010). That court found this factor supported transfer where — even though the defendant sold the infringing product in the plaintiff's chosen forum — the defendant "would be inconvenienced by having to ship" the products to the district "as compared to the ease with which that evidence could be transported to the courthouse" in the transferee court. *Id.* (citation omitted). The same logic applies here. Despite the existence of a distribution chain to Florida, Defendants would be inconvenienced by having to ship their machinery to Florida, as compared to the ease with which the evidence could be transported within Iowa.

Second, the Court weighs ease of access to Defendants' sources of proof more heavily than it does Plaintiffs'. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *In re Genentech, Inc.*, 566 F.3d at 1345 (quotation marks and citation omitted). Defendants will have greater ease of access to their evidence — the allegedly infringing

---

[6] As Defendants concede, the physical location of relevant documents is a "virtually irrelevant" consideration given technological advancements such as electronic document storage and production. *Fruitstone v. Spartan Race Inc.*, 464 F. Supp. 3d 1268, 1282 (S.D. Fla. 2020) (quotation marks and citations omitted); (*see also* Mot. 15).

9

machinery — in Iowa, the state in which the machinery is located. The Court agrees with Defendants; this factor weighs in favor of transfer.

### 3. Convenience of the Parties

Defendants assert the Northern District of Iowa would be a more convenient forum than South Florida because it is "home to two of the four relevant parties" and the "Dealer [D]efendants are peripheral defendants whose convenience is irrelevant for venue, and . . . have consented to [] transfer." (Mot. 16–17 (alterations added)). Plaintiffs insist transfer merely shifts the inconvenience from the Deere Defendants to "the other four parties," and the convenience to the Deere Defendants is outweighed by this shifted inconvenience. (Resp. 13). Generally, "[w]here a transfer merely shifts the inconvenience from one party to another, [the p]laintiff's choice of forum should remain." *Mason v. Smithkline Beecham Clinical Lab'ys*, 146 F. Supp. 2d 1355, 1361 (S.D. Fla. 2001) (alterations added; quotation marks and citation omitted).

The parties disagree on which parties are "relevant" to the convenience analysis. (*See generally* Mot.; Resp). Defendants argue the convenience of the Dealers should not be considered because they are not "relevant" to the case, and separately, because they have consented to transfer. (*See* Mot. 16). According to Defendants, Plaintiffs only joined the two Dealer Defendants to fabricate venue in this District. (*See id.* 16–17). Defendants contend Plaintiffs do not identify any facts showing why these Dealers, as compared to any of the other 150 dealers of the allegedly infringing products, are necessary to their claims. (*See id.*). Not surprisingly, Plaintiffs insist the Court should consider the convenience of the two Dealer Defendants. (*See* Resp. 13–14).

The Court finds the fact that the Dealer Defendants consented to the transfer compelling and considers only the convenience of the two Plaintiffs as compared to the convenience of the two Deere Defendants. The Court has already explained the burden and inconvenience that

10

litigating in South Florida would pose to Defendants. But as inconvenient as it would be for Defendants to litigate in South Florida, because their relevant business is in or around Iowa, it would be equally inconvenient for Plaintiffs to litigate in Iowa because Plaintiffs operate in Florida. (*See* Mot. 16–17; Resp. 13–14). As Plaintiffs stress, David's Dozer V-Loc System Inc. is a mom-and-pop entity based in Florida, with only three employees who are all likely witnesses in the dispute. (*See* Resp. 13–14). Plaintiffs represent that the business would be "severe[ly] burden[ed] [] and disrupt[ed]" by its three employees having to attend trial or hearings in Iowa. (*Id.* 14 (alterations added)).

The Court finds that litigation in Iowa would not be substantially more inconvenient for Plaintiffs than litigation in Florida would be for Defendants. The convenience-of-the-parties-factor therefore does not favor a change in venue.

**4. The Locus of Operative Facts**

"[W]here the operative facts underlying the cause of action did not occur within the forum chosen by the [p]laintiff, the choice of forum is entitled to less consideration." *Motorola Mobility v. Microsoft Corp.*, 804 F. Supp. 2d 1271, 1276 (S.D. Fla. 2011) (alterations added; quotation marks, citation, and footnote call number omitted).

Defendants argue the locus of operative facts is in Dubuque, Iowa, the site of JDCFC's facilities where the accused products were designed, invented, developed, and marketed. (*See* Mot. 17–19). Plaintiffs insist the locus of operative facts "exists all around the nation[,]" including Iowa *and* South Florida. (Resp. 2 (alteration added); *see also id.* 14–16). According to Plaintiffs, South Florida is a locus of operative facts in this case. (*See id.* 14–16). Plaintiffs contend the '300 Patent was invented and developed in South Florida, and direct infringement occurred in the

11

District when customers of the Deere Defendants used the accused products to practice the method claims of the '300 Patent. (*See id.*). On this factor, the Court agrees with Defendants.

As Defendants emphasize, in patent infringement cases, courts often find the "center of gravity" of the case to be "where the accused product was designed and developed." *Motorola Mobility*, 804 F. Supp. 2d at 1276 (quotation marks and citation omitted; collecting cases). While Plaintiffs argue that courts also consider "the place where the patented invention was developed[,]" they fail to provide any compelling in-Circuit support.[7] (Resp. 14 (alteration added; quotation marks and citation omitted); *see generally id.*). For example, Plaintiffs rely on *EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342 (E.D.N.Y. 2012), which, like several other district courts within the Second Circuit, applied a "more expansive view of the locus of operative facts in patent cases." *Id.* at 353; (*see also* Resp. 14–15 (citing *id.*; *Malibu Boats, LLC v. Nautique Boat Co.*, No. 13-cv-656, 2014 WL 202379, at *7 (E.D. Tenn. Jan. 16, 2014) (applying *EasyWeb Innovations* and considering where the patent-in-suit was developed))).

The Court declines to adopt these other courts' more expansive application of this factor. Without more from Plaintiffs, the Court follows the long line of Southern District of Florida cases holding the locus of operative facts is the location where the allegedly infringing products were developed. *See, e.g.*, *MindbaseHQ LLC v. Google LLC*, 20-cv-24742, 2021 WL 1923142, at *4 (S.D. Fla. May 13, 2021); *Carucel Invs., L.P. v. Novatel Wireless, Inc.*, 157 F. Supp. 3d 1219, 1225 (S.D. Fla. 2016); *Motorola Mobility*, 804 F. Supp. 2d at 1276; *Trace-Wilco, Inc.*, 2009 WL 455432, at *2–3.

---

[7] Plaintiffs also cite *Heiber Patent Licensing, Corp. v. Wazana Bros. Int'l, Inc.*, No. 09-cv-1054, 2010 WL 11626581 (M.D. Fla. Mar. 5, 2010), where the court considered the location where the inventor of the patent-in-suit and his business were located. *See id.* at *3 (by challenging the validity of the patents at issue, the defendant "shifts the focus of the case . . . to [the place] where the inventor resides" (alterations added)). That case is distinguishable, however, because there the defendant challenged the validity of the patents in issue. *See generally id.*

12

Plaintiffs also argue that because the asserted claims of the '300 Patent are method-of-use claims, direct infringement occurs in South Florida whenever customers of the accused products use those products to practice the method claims of the '300 Patent. (*See* Resp. 15–16). This argument fails to persuade. *See MindbaseHQ LLC*, 2021 WL 1923142, at *4 (disagreeing with the plaintiff's "contention that the relevant center of gravity inquiry should focus on where the *patents-in-suit* were designed and developed[,]" where the patent included method claims (alteration added; citations omitted)); *Mayfonk, Inc. v. Nike, Inc.*, No. 13-60755, 2013 WL 12085086, at *2 (S.D. Fla. June 17, 2023) (same). Once more, Plaintiffs provide no convincing authority that "method claims" should be treated any differently than "device claims."[8] (*See generally* Resp.). This factor therefore weighs in favor of transfer.

**5. The Ability to Compel the Attendance of Unwilling Witnesses**

As discussed, non-party witnesses are located in several states outside of Florida and Iowa. (*See* Resp. 16). Defendants insist there are non-party witnesses located within 100 miles from and subject to the subpoena power of the Northern District of Iowa, and there are no non-party witnesses in Florida subject to the Court's compulsory powers. (*See* Mot. 19). Plaintiffs argue South Florida is an easier travel destination than Iowa for non-party witnesses located in other states. (*See* Resp. 16). Ultimately, this factor is neutral.

Even assuming it is easier for non-party witnesses in other states to travel to South Florida than to travel to Iowa, the Court's subpoena power only reaches a 100-mile radius. *See* Fed. R. Civ. P. 45(c)(1). "The Court cannot compel any unwilling witness residing outside of Florida to testify." *Stokes v. Markel Am. Ins. Co.*, No. 19-20404-Civ, 2019 WL 8017457, at *4 (S.D. Fla.

---

[8] Plaintiffs only cite to *Heiber Patent Licensing, Corp.*, 2010 WL 11626581, which the Court has already distinguished. (*See* Resp. 16; *supra* note 7).

June 28, 2019) (citations omitted).  Because there are no non-party witnesses in Florida, and Defendants identify at least some non-party witnesses within the subpoena power of the Northern District of Iowa, this factor weighs slightly in favor of transfer.  Defendants have not suggested these non-party witnesses would be unwilling to appear, however, so "this factor does not add much to Defendants' Motion."  *Trafalgar Capital Specialized Inv. Fund (In Liquidation) v. Hartman*, 878 F. Supp. 2d 1274, 1287 (S.D. Fla. 2012) (citation omitted).

### 6. The Relative Means of the Parties

Defendants argue the relative-means-of-the-parties factor is neutral because all parties are corporate entities or their founders.  (*See* Mot. 20–21).  Plaintiffs disagree, insisting the revenue disparity between the Deere Defendants and David's Dozer V-Loc System, Inc. warrants retention of the case in Florida.  (*See* Resp. 16–18).  The Court finds this factor is neutral.

"As a general rule, courts do not give the parties' relative means great weight when . . . both parties are corporations."  *CoachComm, LLC v. Westcome Wireless, Inc.*, No. 21-cv-743, 2023 WL 3218500, at *10 (M.D. Ala. May 2, 2023) (alterations adopted; other alteration added; quotation marks and citation omitted).  This is the case even where one party is a large corporation and the other is a small, non-public company.  *See MindbaseHQ LLC*, 2021 WL 1923142, at *6 (denying a motion to transfer based on the means of the parties where the plaintiff was a "small, two-member company" and the defendant was "one of the largest publicly traded corporations ever to exist").

Plaintiffs fail to undermine the *MindbaseHQ LLC* holding that the relative means factor is neutral where both parties are corporations.[9]  (*See generally* Resp.).  They emphasize that David's

---

[9] Plaintiffs cite a case where a court found the relative means of the parties supported transfer to the defendant's requested forum because the defendant was a small five-person company and transporting its employees to Miami would require the defendant to close shop for the day.  (*See* Resp. 17 (citing *Bartolon-Perez v. Island Granite & Stone, Inc.*, 14-cv-21010, 2014 WL 12513973, at *3 (S.D. Fla. Aug. 25, 2014))).

14

Dozer is "a 'mom and pop' company with only three employees" litigating against a Fortune 100 company with 68,333.33 times greater revenue. (*Id.* 17 (citation omitted)). The court in *MindbaseHQ LLC* rejected a similar argument, disregarding the means disparity between Google and a small two-member company. *See MindbaseHQ LLC*, 2021 WL 1923142, at *6.

Plaintiffs also argue Armas is an individual plaintiff and provide examples of cases where courts denied motions to transfer where an individual sued a corporation. (*See* Resp. 17 (citing *Alexandre v. Nat'l Union Fire Ins. Co.*, No. 20-cv-60130, 2020 WL 3266072, at *4 (S.D. Fla. Mar. 30, 2020) (finding the relative means of the parties weighed in favor of the plaintiff where the plaintiff was an individual suing her insurance company); *Ritter v. Metropolitan Casualty Ins. Co.*, No. 19-cv-10105, 2019 WL 8014511, at *4–5 (S.D. Fla. Dec. 3, 2019) (same))). But the individuals in those cases were not corporate founders, as is the Plaintiff here. Thus, Plaintiffs fail to persuade that Armas's "individual" status warrants some heightened consideration. The Court is equally unconvinced by Plaintiffs' asserted "financial burden" of obtaining local counsel in another forum (Resp. 17) — a matter another court in this District found "should prove neither severely onerous nor expensive[,]" *Grail Semiconductor, Inc. v. Stern*, No. 12-60976-Civ, 2013 WL 2243961, at *3 (S.D. Fla. May 21, 2013) (alteration added); *see also id.* at *5.

In conclusion, the relative-means-of-the-parties factor is neutral.

### 7. The Forum's Familiarity with the Governing Law

The forum's familiarity with the governing law "is of little value" where "an action [is] solely grounded in federal law[,]" as here. *Rothschild Connected Devices Innovations, LLC v. The Coca-Cola Co.*, No. 15-24067-Civ, 2016 WL 1546427, at *7 (S.D. Fla. Apr. 15, 2016) (alterations

---

But in that case, "all actions or omissions giving rise to the dispute" occurred in the defendant's requested forum. *Bartolon-Perez*, 2014 WL 12513973, at *1. Plaintiffs cannot argue the same is true for South Florida in this case.

15

added). Defendants contend this factor is neutral because the case is brought under the Patent and Lanham Acts, both federal laws. (*See* Mot. 22). Plaintiffs do not dispute the case arises under federal law. Instead, they argue the Court has more familiarity with the governing law because it has "significantly more experience in overseeing patent infringement cases." (Resp. 18). But Plaintiffs provide no support for this argument. (*See generally id.*); *see also Rothschild Connected Devices Innovations, LLC*, 2016 WL 1546427, at *7.

The Court will not find that another federal court is somehow less qualified to decide questions of federal law than are courts in this District, and this factor is therefore neutral.

### 8. Weight Accorded a Plaintiff's Choice of Forum

Plaintiffs are correct that a plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations. (*See* Resp. 5 (citing *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996); other citation omitted)). Yet, Defendants are also correct that "where the operative facts underlying the cause of action did not occur within the forum chosen by the [p]laintiff, the choice of forum is entitled to less consideration." (Mot. 14 (citing *Motorola Mobility*, 804 F. Supp. 2d at 1276 (alteration, other citation omitted, and quotation marks omitted; other alteration added))). Consequently, Plaintiffs' choice of forum is due little weight.

The "'center of gravity'" — where the operative facts underlying a cause of action occurred — in a patent infringement case is often considered the place where the accused product was designed and developed. *Trace-Wilco, Inc.*, 2009 WL 455432, at *2 (citation omitted). Similarly in a false advertising case, "the locus of operative facts is the location from which the [d]efendants developed or created the allegedly unlawful content." *Implant Seminars, Inc. v. Lee*, No. 18-23097-Civ, 2019 WL 1979365, at *6 (S.D. Fla. May 3, 2019) (alteration adopted; other alteration added; quotation marks and citation omitted). Here, the operative facts underlying the

causes of action occurred in Iowa. (*See generally* SAC; Mot.; Resp.). The research leading to the invention of the accused products took place in Iowa; all the inventors of the Deere Patents live in Iowa; and the product marketing manager who Plaintiffs repeatedly reference in their pleading lives in Iowa. (*See* Mot. 10). These other considerations outweigh Plaintiffs' choice to litigate at home.

### 9. Trial Efficiency and the Interests of Justice

Defendants assert "[t]he less congested dockets and more readily available resources in the Northern District of Iowa favor transfer" because the Southern District of Florida "manages a heav[ier] caseload[.]" (Mot. 23 (alterations added)). Additionally, Defendants maintain the interests of justice support transfer because Iowa is "[t]he center of the alleged infringement, related parties, and the community with the most interest in this matter[.]" (*Id.* (alterations added; citations omitted)). Plaintiffs only address the trial efficiency prong and assert the Northern District of Iowa has a higher active caseload per judge than the Southern District of Florida and a longer time from case inception to trial. (*See* Resp. 18–19).

The congestion of the courts is neutral or cuts against transfer. While courts consider the "relative congestion of cases in the competing forums[,]" it is not a dispositive factor. *Grail Semiconductor, Inc.*, 2013 WL 2243961, at *6 (alteration added; citing *P & S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 808 (11th Cir. 2003)).

Since Plaintiffs do not dispute the interests of justice, the Court considers in which District the case would be most quickly resolved. "Courts require a significant difference between districts before finding that congestion merits transfer." *Gubarev v. Buzzfeed, Inc.*, 253 F. Supp. 3d 1149, 1168 (S.D. Fla. 2017) (quotation marks and citations omitted). One significant metric the Court

considers is "the median time from filing to trial or disposition." *Nat'l Tr. Ins. Co. v. Pa. Nat'l Mut. Casualty Ins. Co.*, 223 F. Supp. 3d 1236, 1247 (M.D. Fla. 2016).

According to the December 2023 Federal Court Management Statistics, the median time from filing to disposition in civil cases was 0.0 months in the Southern District of Florida and 7.6 months in the Northern District of Iowa. United States District Courts — National Judicial Caseload Profile, United States Courts, https://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2023_0.pdf. The median time from filing to trial in civil cases was 23.1 months in the Southern District of Florida and unreported in the Northern District of Iowa. (*See id.*). While Defendants are correct the Southern District of Florida hears significantly more cases than the Northern District of Iowa, it also has considerably more Judges. (*See id.*). Thus, to the extent there is a significant difference between the Districts, this factor — although not dispositive — weighs in favor of retention.

**C. Balancing the Section 1404(a) Factors**

Ultimately, only one non-dispositive factor weighs in favor of retention and several factors weigh in favor of transfer, particularly the convenience of the witnesses, location of the evidence, and the locus of operative facts. Therefore, transfer of this action to the Northern District of Iowa is warranted.

**D. Severance**

Defendants argue the claims against the Dealer Defendants should be severed from those against the Deere Defendants and stayed. (*See* Mot. 23–27). Plaintiffs insist if the Court does transfer the case, it should include the Dealer Defendants because they are commonly represented and consent to jurisdiction in the Northern District of Iowa. (*See* Resp. 19–20). On this issue, the Court agrees with Plaintiffs.

Courts may transfer a case and sever claims against peripheral defendants where "it is unclear whether the entire action could have been brought in the transferee venue," *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1364 (Fed. Cir. 2014) (citations omitted), because "[o]therwise, a plaintiff could preclude the court from considering whether transfer would serve the interest of justice by including a defendant, not subject to suit in the more convenient district, who was in some manner peripherally involved in the alleged wrongdoing[,]" *In re Amazon.com, Inc.*, No. 22-157-Civ, 2022 WL 17688072, at *2 (Fed. Cir. Dec. 15, 2022) (alterations added; quotation marks and citation omitted).[10] Defendants contend Plaintiffs "cherry-pick[ed] two out of approximately 150 dealers who sell" the allegedly infringing products "clearly in an attempt to fabricate venue." (Mot. 24 (alterations added; citations and emphasis omitted)). According to Defendants, the Deere Defendants are the true defendants in this dispute, and the claims against the Dealer Defendants should be severed so the true case can proceed in the most convenient district. (*See id.* 23–25).

While Plaintiffs' choice to join only these two Dealer Defendants out of all 150 dealers after Defendants filed their original motion to transfer is certainly suspect (*see generally* SAC; Resp.), it makes no difference. The Court is *not* precluded from considering transfer of the entire case. As explained, venue is proper if a party consents to it even if it would otherwise be improper under the venue statutes. *See Game Controller Tech. LLC*, 994 F. Supp. 2d at 1273. And here, the Dealer Defendants have consented to transfer. (*See* Mot. 8 n.1).

Thus, the case can proceed in its entirety in the Northern District of Iowa. The claims against the Dealer Defendants will not be severed and stayed.

---

[10] Defendants insist the Court should apply the customer-suit exception to sever and stay the claims against the Dealer Defendants. (*See* Mot. 23–25). The customer-suit exception to the first-filed rule allows district courts to "stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011). While the Court considers the "same general principles" of the doctrine, the circumstances of this case differ because there is no separate pending suit. *In re Nintendo of Am., Inc.*, 756 F.3d at 1365.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendants' Motion to Sever and Transfer Claims Against Defendants Deere & Company and [JDCFC] to the Northern District of Iowa and Stay Claims Against Defendants Dobbs Equipment, LLC and Everglades Equipment Group **[ECF No. 70]** is **GRANTED in part**. The Clerk is instructed to transfer this case to the United States District Court for the Northern District of Iowa and mark this case as **CLOSED** in this District.

**DONE AND ORDERED** in Miami, Florida, this 30th day of May, 2024.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:  counsel of record